# CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY
## *v.*
## EDWARD W. BANKER.

EVIDENCE—*plat or map.* In an action on the case against a railway company for killing a colt, the defendant, for the purpose of showing that the place where the accident occurred was inside of the limits of the village of Hinsdale, offered to give in evidence to the jury a map or plat thereof, recorded subsequent to the date of the accident. The court excluded the map on the ground that it had not been recorded at the time of the accident. *Held,* that the map was proper to show the intent of the owners of the land to dedicate, and the extent of the dedication, and therefore ought not to have been excluded from the jury.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action on the case commenced to the August Term, A. D. 1866, of the Superior Court of Chicago, by the appellee against the appellant to recover the value of a colt killed upon the road of the appellant at a place called Hinsdale, in Dupage county.

The case was tried at the November Term, and a verdict and judgment obtained against the appellant for the sum of $400.

The action was brought under the act of February 14, 1855, requiring railroad companies to fence their road in certain localities.

The declaration contained two counts, and sets forth, in substance, that the killing was caused by the careless and negligent conduct of defendant in not fencing the road as required by law, and the careless, negligent and improper manner it ran its locomotive and train.

To which the defendant filed its plea "not guilty."

Messrs. WALKER & DEXTER, for the appellant.

It appears from the evidence that the colt was killed on the depot grounds of appellant, at a place called Hinsdale, in Du Page county.

The depot grounds of the appellant at that place are about fifteen hundred feet in length from east to west, and about three hundred feet in width from north to south. The colt was killed near the west end of those grounds, but was found west of the west end of the grounds, having been carried over the cattle guard by the locomotive. At the time this accident occurred the village of Hinsdale was quite small, consisting of some half dozen dwelling-houses, the depot building, situate on the depot grounds, about midway between the eastern and western limits of same. Other houses, a store and other buildings, however, were being erected, and those already completed were all occupied. The town at that time had been regularly platted and laid out into lots, streets and alleys, and according to the plat, extended some distance beyond the limits of the depot grounds on all sides, the depot grounds being fully within the town as platted. This plat was made and acknowledged September 22, 1865, and the lands appropriated and dedicated to the uses and purposes of the village; but was not recorded until August 14, 1866, after the accident occurred. This plat was offered in evidence on the trial, but was ruled out for the reason that it was not recorded until after the accident occurred, and exception taken.

Before the appellee was entitled to recover in this action it was, among other things, incumbent on him to prove that the colt got upon the road of the appellant at some point not excepted by the statute; that is, at some point on the road required by the statute to be fenced; and from the want of a proper fence or cattle-guard, or by reason of the fence or cattle-guard being out of repair, unless it appears that the damage was negligently or willfully done.

The term "village" in the statute, is evidently to be taken in its ordinary and common acceptation as distinguished from a city or town, as all these terms are made use of in the statute, for the purpose of determining where the company were not bound to fence, and when it says that no fence shall be required in villages, it means villages in the ordinary sense as distinguished from a city or town; any small collection of houses.

Webster says, " a village is a small assemblage of houses, less than a town or city, and inhabited chiefly by farmers and other laboring people. In England it is said that a village is distinguished from a town by the want of a market. In the United States no such distinction exists, and any small assemblage of houses in the country is called a village."

In the case of *The Illinois Central Railroad Company* v. *Williams*, 27 Ill. 49, CATON, Ch. J., says, in a similar case to this :

" Any small assemblage of houses for dwellings, or business, or both, in the country, constitutes a village, whether they are situated on regularly laid out streets or not." *Godfrey* v. *City of Alton*, 12 Ill. 30 ; *Marcy* v. *Taylor*, 19 id. 634 ; *Waugh* v *Leech*, 28 id. 488.

If the owners of land agree upon a place and make a survey and lay off grounds for the public use, and make sales in reference thereto, it amounts to a dedication of such ground to the public, although no map was made of the survey.

In the case of *The People* v. *Beaubien*, 2 Doug. 256, 276., GOODWIN, J., says, that, " To constitute a valid dedication, there must exist the intention to dedicate clearly evinced by the acts of the owner of the land ; that there must be, as was said in the late case of *Poole* v. *Huskisson*, 11 Exch. 380, an *animus dedicandi*, or as Chief Justice DENMAN said in *Barraclough* v. *Johnson* (8 Ad. & E., 35 E. C. L. 337), " a dedication must be made with the intention to dedicate ;" that while there may be a dedication by acts *in pais*, without deed, all such acts connected with, or relating to the premises, tending to show the design and object of the dedication which is alleged, may be gone into for the purpose of determining whether there has been a dedication or not." See also *Livingston* v. *City of New York*, 8 Wend. 85 ; *Wyman* v. *Mayor*, 11 id. 490 ; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407 ; *Warren* v. *President, etc., of the Town of Jacksonville*, 15 Ill. 236.

It is also well settled that no particular time is necessary to show a dedication ; if the act is unequivocal, it may take place immediately. BEARDSLEY, J., in the case of *Hunter* v. *Trus-*

*tees of Sandy Hill*, above cited, says: "No certain period of time is required to prove a dedication of property to public use. It does not depend upon the lapse of time, but upon the intention and the acts of the parties. Twenty years adverse holding may bar a right of entry, and upon it, a grant may be presumed. But time, although cogent evidence of a dedication, is not a necessary ingredient in it. It may be established by acts unequivocal in their character on the part of the owner and the public, although occurring on a single day."

In *Woodyer* v. *Haddan*, 5 Taunt. 125, CHAMBRE, J., says: "No particular time is necessary as evidence of dedication; it is not, like a grant, presumed from lapse of time. If the act of dedication is unequivocal, it may take place immediately, as for instance, if a man builds a row of houses on each side of a strip of ground, making it a street, leading into another street, and sells, or lets these houses, it is instantly a highway."

Mr. GEORGE G. BELLOWS, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

We deem it unnecessary to consider more than one point raised on this record, and that is, excluding from the jury the plat of the village of Hinsdale, acknowledged January 1st, 1866, and recorded August 14, of the same year.

We are of opinion the plat should have gone to the jury for two purposes, first, to show the intent by the owners of the land to dedicate certain portions of it for the village streets, and second, to show the extent of the dedication.

So far as we understand the proof, Hinsdale was a village, coming up to the definition of a village, as given by this court, in the case of the *Ill. Central R. R. Co.* v. *Williams*, 27 Ill. 49.

We are not entirely satisfied with the second instruction given for the plaintiff. We do not find in the record any evidence the colts got on the road at a crossing of a public road. To instruct the jury to believe from the evidence a fact which is not in evidence, tends to mislead a jury, and should be avoided.

For the reason given the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*